STEAGALL, Justice.
Daniel Lambert appeals from a summary judgment entered in favor of Ivan Leonard Chevrolet, Inc., in an action alleging conversion and breach of contract. That judgment was made final pursuant to Rule 54(b), A.R.Civ.P.
Approximately seven days after Lambert’s stolen automobile was recovered, it was towed by Kemp’s Garage to the Ivan Leonard Chevrolet dealership to be repaired. Approximately one month later, Lambert towed the automobile from Ivan Leonard Chevrolet to the Edwards Chevrolet dealership.
In his complaint, Lambert alleges:
“The employees at Ivan Leonard Chevrolet used the Plaintiff’s car to fix other cars by taking parts off it and [using] them on cars of other customers, namely the horn button on the steering wheel and the brake light switch. Ivan Leonard had no intention of fixing the Plaintiff’s car.”
In support of its motion for summary judgment, Ivan Leonard Chevrolet submitted excerpts from Lambert’s deposition, wherein Lambert testified as follows:
“Q. Did [Ivan Leonard Chevrolet] draw up for you a repair order?
“A. Not that I remember.
“Q. Do you recall signing a document authorizing Ivan Leonard to make repairs?
“A. No.
“Q. Did you have a clear understanding when you left Ivan Leonard as to what repairs they were going to undertake?
“A. Yes. They told me they were going to ... fix all the things that were wrong with it, and I told [them] to make sure they check the engine and stuff. They told me they were going to check out everything.
‘Q. Okay. And did they perform any kind of repair work on that automobile?
‘A. Not that I know of.
‘Q. What was the next communication you had with Ivan Leonard concerning repair work?
‘A. I think I called them and asked them maybe a week or two later ... what had they done to the car. They told me nothing. They were waiting on ... the appraiser to come over for something they had to check on.
[[Image here]]
‘Q. Whenever they told you they were waiting on the appraisal, did you tell them you were going to leave it there? Did you tell them [to] give it back to you? What was the— how did that conversation go?
‘A. No. I left it there after [they] said the guy was coming over and they was going to go back over the appraisal, whatever, but in the meantime, while it was still sitting there, when I did determine that I wanted to get the car over there, I discovered that someone had went out there and took my horn button off the car. And seems like, I believe it was the brake switch or flasher.
[[Image here]]
‘Q. Now, what is the brake flasher?
A. I think it’s the little thing, looks like a little fuse or whatever it is that cause[s] your brakes to react, ... come on, whatever.
‘Q. The light?
A. Fuse or whatever it was. I don’t think it was the light.
:Q. All right. Had you examined the automobile when Kemp’s [Garage] got it to Ivan Leonard, after they had towed it from Kemp’s to Ivan Leonard?
*492 “A. No, but I knew the horn button was on it when it — before it left from—
“Q. Kemp’s?
“A. —Kemp’s, yeah.
“Q. And — but you didn’t follow the automobile out to Ivan Leonard’s?
“A. No. I sure didn’t.
“Q. What you know is the next time you saw it, the horn button was missing?
“A. That’s right.
“Q. Did Ivan Leonard replace the horn button?
“A. Yes, they did.
[[Image here]]
“Q. You don’t know if Ivan Leonard took that fuse or not?
“A. No, I don’t.
“Q. What complaints do you have about Ivan Leonard and what they did or didn’t do to your automobile?
“A. Well, one of the things, taking the horn button off. If they wasn’t going to do any work to it, they had no business removing the horn button.
[[Image here]]
“Q. Do you have any other complaints against Ivan Leonard?
“A. Oh, yeah. The treatment that Larry Lee [an employee at Ivan Leonard Chevrolet], the attitude he had, because when he brought the horn button to me, he told me he was going to put it on. So I told him, I said, well, you told me you were going to put the horn button on, so I said why haven’t you put it back on? So he — at that point he snatched the horn button from me and some smart remark he made.
[[Image here]]
“Q. Why did Ivan Leonard not undertake to repair your automobile?
“A. I don’t know.
“Q. Did they tell you to come get it?
“A. Yes. Larry finally told me to come get it.
[[Image here]]
“Q. Why did he tell you to come get it? Did he explain?
“A. No, he didn’t.
“Q. Had the appraisal been done?
“A. Yes. The appraisal had been done.
“Q. So he just said the appraisal has been done, come get your car?
“A. Basically later on, right.
[[Image here]]
“Q. Can you — do you have any idea as to what monetary damage you consider Ivan Leonard having done to your automobile?
“A. No, not really.
“Q. Do you consider them having done any damage to the horn button?
“A. That, I really don’t know, because I am not a repair man.”
Lambert presented no evidence in response to Ivan Leonard Chevrolet’s motion.
In Walker v. Southeast Alabama Medical Center, 541 So.2d 464, 465 (Ala. 1989), this Court stated:
“ ‘When a motion for summary judgment is made and supported as provided in this rule [Rule 56, A.R.Civ.P.], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.’ Rule 56(e), A.R.Civ.P. The plaintiff having failed to offer any evidence to contradict that presented by the defendants, ‘the court is left with no alternative but to consider that evidence uncontroverted.’ Whatley v. Cardinal Pest Control, 388 So.2d 529, 532 (Ala.1980).”
Ivan Leonard Chevrolet made a prima facie showing that there was no genuine issue of material fact, and Lambert offered no evidence to show that there was a genuine issue for trial. Therefore, on the authority of Walker v. Southeast Alabama *493 Medical Center, supra, the judgment is affirmed. See Rule 56(c), A.R.Civ.P.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and INGRAM, JJ., concur.